IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LORRIE J. BECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 06-154-CO |
| v. | ) | |
| | ) | FINDINGS AND |
| JO ANNE B. BARNHART, Commissioner of | ) | RECOMMENDATION |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DAVID B. LOWRY
9900 SW Greenburg Rd.
Columbia Business Center, Suite 235
Portland, OR  97223

            Attorney for Plaintiff

KARIN IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204

1 - FINDINGS AND RECOMMENDATION

MICHAEL McGAUGHRAN
Regional Chief Counsel, Region X, Seattle
DAVID M. BLUME
Special Assistant U.S. Attorney
Assistant Regional Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104

      Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Lorrie J. Beck brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision should be affirmed.

## BACKGROUND

Beck was born July, 8, 1962. She has a GED and attended college for one year. She also has training as a medical assistant. She worked as a medical laboratory assistant, bartender, and waitress. She had a period of disability from 1991 until November 1996, when she returned to work as a laboratory assistant. Beck last worked in March 2002, as a medical laboratory assistant. She alleged that she was "terminated for medical reasons." Tr. 57.[1] Her work records show that she resigned voluntarily, giving "health problems" as the reason. Tr. 145.

---

[1]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - FINDINGS AND RECOMMENDATION

Beck alleges disability due to "back pain and side effects from pain medications." Tr. 57. She asserts that her pain is so bad she cannot walk, sit or stand for long periods and her pain medications make her unable to think clearly.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R §§ 404.1520, 416.920. Beck challenges the ALJ's evaluation of the evidence and his conclusions at steps two and four of the sequential process.

At step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant has no severe impairment, the Commissioner will find that she is not disabled within the meaning of the Act. If the claimant has a severe impairment, the Commissioner must continue the sequential evaluation process.

Here, the ALJ found that Beck has a combination of impairments that is severe within the meaning of the regulations. Accordingly, Beck surmounted her burden at step two and the ALJ continued to the remaining steps. Nonetheless, Beck challenges the ALJ's determination that two

of her alleged impairments, sleep apnea and depression, are not "severe" when considered individually.

For the purposes of step four, the Commissioner must first assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. Beck challenges the ALJ's evaluation of the evidence of her functional limitations and his assessment of her RFC.

At step four, the Commissioner must determine whether the claimant's RFC leaves her able to perform work she has done in the past. If the ALJ determines that she retains the ability to perform her past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Beck challenges the ALJ's determination that she retains the ability to perform her past work and is not disabled.

## THE ALJ's FINDINGS

The ALJ found Beck's ability to work significantly affected by degenerative disc disease of the lumbar spine exacerbated by obesity. He found that she had sleep apnea and mental impairments that did not separately have a significant impact on her ability to perform basic work activities.

The ALJ assessed Beck's RFC as follows:

> Based on all of the evidence of record and extending as much credibility to the claimant as possible regarding her subjective complaints, I find the claimant retains the ability to push, pull, lift, and/or carry up to 10 pounds frequently and up to 20 pounds occasionally. She requires the option to sit or stand at will. She can frequently balance. She can occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes or scaffolds.

Tr. 27.

The vocational expert testified that Beck's past work as a medical laboratory assistant did not require work activities precluded by her RFC. The ALJ concluded Beck could perform her past relevant work and was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## DISCUSSION

Beck contends the ALJ erred at step two by finding her sleep apnea and depression nonsevere impairments. She contends the ALJ erred in evaluating the evidence of her functional limitations

5 - FINDINGS AND RECOMMENDATION

by discounting her testimony and that of three lay witnesses. She contends the ALJ failed to apply the requirements of Social Security Ruling (SSR) 96-8p in assessing her RFC. Beck asserts the ALJ elicited testimony from the vocational expert (VE) with hypothetical vocational limitations that did not accurately reflect her functional limitations. As a consequence, she argues, the VE's testimony does not support the ALJ's conclusion that she is capable of performing her past work.

### I.    Step Two Claims

At step two of the sequential evaluation, the claimant must show that she has a severe impairment or combination of impairments. *Yuckert*, 482 U.S. 146. If she cannot meet this burden, the Commissioner will find her "not disabled" without continuing to the remaining steps in the five-step decision-making sequence. 20 C.F.R. §§ 404.1520(c), 416.920(c); SSR 85-28.

This threshold showing of severity is designed to increase the efficiency of the evaluation process by excluding at an early stage claimants whose impairments are so slight that the remaining steps are highly unlikely to lead to a finding of disability. *Yuckert,* 482 U.S. at 153. It is a *de minimis* screening device to dispose of groundless claims. *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ can deny a claim at step two only if the claimant's impairments do not have more than a minimal effect on her ability to perform basic work functions. 20 C.F.R. §§ 404.1521(a), 416.921(a); SSR 85-28; SSR 96-3p.

Beck's argument fails to show an error at step two because the ALJ did not deny her claim at step two. Instead, the ALJ found that she surmounted the *de minimis* severity screening by showing she has a combination of impairments that limits her ability to perform basic work activities. The ALJ properly continued to the remaining steps of the sequential decision-making process.

After a claimant has surmounted the *de minimus* burden at step two, the regulations require the ALJ to consider the functional limitations from all medically determinable impairments in the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 416.923. Accordingly, the remaining issue is whether the ALJ properly considered all functional limitations attributable to sleep apnea and depression in his assessment of Beck's RFC and in the remaining steps of the sequential process.

The ALJ found that Beck had mental impairments resulting in only mild functional limitations. Beck has a history of previous mental problems, but provides no medical records from a psychologist or psychiatrist. In April 2001, a Depression Inventory suggested minimal, if any, depression. Tr. 138. Her primary care physician, Timothy Cleary, M.D., prescribed an antidepressant medication in November 2002, when Beck reported anxiety following the death of her father-in-law. Tr. 202. Dr. Cleary found her stable by January 2003 and in August 2003 found no signs of depression or anxiety. Tr. 180-84. There is no record that Beck sought or received any mental health counseling.

There is also no record of any significant functional limitations caused by depression. Even assuming Dr. Cleary's prescription of antidepressant medication amounted to a diagnosis of depression, a diagnosis without significant functional limitations has no vocational significance. The claimant has the burden of proving any limitations in her ability to do basic work activities; Beck did not show that depression limited her ability to understand, remember or carry out simple instructions, use judgment, respond appropriately to co-workers, supervisors and usual work situations or deal with changes in a routine work setting. *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001); *Roberts v. Shalala*, 66 F.3d at 182. The mere fact that a condition has been

acknowledged with a medical diagnosis does not establish functional limitations.  *See Key v. Heckler,* 754 F.2d 1545, 1549-1050 (9th Cir. 1985);  *Young v. Sullivan,* 911 F.2d 180, 183-184 (9th Cir. 1990).

Similarly, Beck showed only a diagnosis of sleep apnea.  She was diagnosed with moderate obstructive sleep apnea after a sleep study supervised by Michael Lefor, M.D.   Dr. Lefor recommended evaluation of treatment with a continuous positive airway pressure device (CPAP).  There is no record that the evaluation was completed or that a CPAP device was prescribed.

The ALJ noted

> However, there is no evidence the claimant complied with that treatment recommendation.  She testified at the hearing she does not use CPAP and her ability to sleep is limited primarily by lower back discomfort.  Based on the claimant's testimony, I conclude her sleep apnea results in no more than minimal limitations in her ability to perform substantial gainful activity and thus represents a non-severe impairment.

Tr.  21-22.

Beck contends the ALJ erred by citing her noncompliance with treatment recommendations as a reason for determining her impairment was nonsevere.  The court agrees that the ALJ could not reasonably find Beck noncompliant with recommended treatment when it appears that no physician prescribed a CPAP machine or gave her the opportunity to decline to use one.  Nonetheless, at a minimum, the evidence is sufficient to show that Beck's sleep apnea is readily treatable.  There is no evidence that it would result in any functional limitations when treated.

Beck also objects to the ALJ's characterization of her testimony.  Beck testified that she sleeps three or four hours a night, which is interrupted because she is up when it is time to take medicine for her back pain and when she has discomfort in her back.  Tr. 294.  The ALJ did not

reject Beck's statement that she experiences brief, interrupted sleep. He simply attributed the sleep disturbances to her back discomfort and medication schedule instead of sleep apnea. This is a reasonable interpretation of her testimony.

Furthermore, Beck herself did not attribute functional limitations to sleep apnea or depression. She alleges disability based on back pain and medication side effects. Accordingly, the court finds no significant error in the ALJ's evaluation of the evidence of sleep apnea or depression.

## II.    RFC Assessment

Beck contends the ALJ erred in assessing her RFC by improperly discounting her testimony and that of three lay witnesses and by failing to apply the procedures required by SSR 96-8p.

### A.    Credibility Determination

Beck testified that her ability to work is limited primarily by severe low back pain that sometimes radiates to her hip and by side effects from medications. The pain limits her ability to sit, stand and walk. She can sit for only 20 to 25 minutes and then must shift positions or lie down. She can stand briefly and walk no more than one-half block without pain. She testified that she typically spends about six hours lying down during the day. She stated that she has fallen in the past when the pain from standing became too great, most recently six months before the hearing. Tr. 289-92.

Beck testified that she sleeps three and one-half to four hours per night, awakening when it is time to take pain medication and when she has discomfort in her low back. Tr. 293-94. She testified that she is unable to do housework and must sit on a stool to cook. She uses an electric scooter to shop. Tr. 295-96. She admitted she has traveled by truck to Utah and by air to Louisiana.

In August 2002, Beck visited relatives in New Orleans for 10 days and reported a severe sunburn after spending a day at the pool.  Tr. 302-04.

Beck claimed side effects from prescription medications, including grogginess, upset stomach and loss of concentration.  Tr. 290-91.

Beck testified that she would not be able to do a job even if it did not require lifting due to side effects of medications and back discomfort.  She stated that while working as a laboratory assistant at Quest Diagnostic, she was permitted to lie down when she felt groggy from taking pain medications and to go home early when she had severe back pain.  Tr. 288-89.

The ALJ found Beck's allegations to be not fully credible.  He believed that she was significantly limited by back pain and obesity, but he did not believe her assertions that the pain and side effects left her unable to perform any kind of work.  He found Beck's back pain severe enough to preclude lifting, carrying, pushing or pulling more than 10 pounds frequently or 20 pounds occasionally.  He believed that her impairments limited Beck to jobs that would permit her to alternate sitting and standing at will.

In summary, the ALJ did not reject any of Beck's statements except her allegation that she cannot perform light and sedentary work.  Beck implied that she would not be able to complete a full time work schedule by alternating sitting and standing without taking additional breaks to lie down. The ALJ did not accept that suggestion.  Nor did he accept the suggestion that side effects from medications would result in limitations that would preclude light work.

An ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283, 1284.  When making a credibility evaluation, the ALJ may consider

objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F3d at 1284. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ considered appropriate factors and made specific findings to support his credibility determination. He reviewed the objective medical evidence and found that it supported only mild degenerative disc disease without radiculopathy. All the diagnostic images in the file showed only mild disc and facet degeneration without focal disc herniation or impingement of the neural elements. Tr. 261. There is no record of neurological compromise, muscle atrophy, weakness or other signs of loss of function.

The diagnostic images predated Beck's alleged onset date, but coincided with her reports of severe back pain. Beck told Dr. Cleary her pain caused severe functional restrictions beginning in May 1998. Tr. 140. In April 2001, she told Dr. Kaur-Jayaram that her severe pain had persisted for two years. Tr. 137-39. The MRI images showing only mild degeneration were generated in 1999 and 2000. Tr. 261. Beck did not produce medical evidence of a deterioration in her condition coinciding with her decision to stop working in March 2002.

The ALJ considered Beck's treatment history which showed that she received only conservative treatment. Beck did not require urgent intervention and she had no condition that was amenable to surgical treatment. Therapies that would be expected to reduce pain reportedly had no

effect on Beck, including IDET therapy and a trial with an electronic stimulation unit.  Beck declined

to pursue or failed to continue other recommended therapies, including facet injections, weight loss,

swimming programs, biofeedback and psychological counseling.

Beck reported reasonably good relief from pain medications and muscle relaxants. Tr. 122-

23, 131, 133, 156.  Her treatment history shows that her complaints of back pain diminished with

pain management treatment and subsided in late 2002, when Dr. Kaur-Jayaram noted that she had

stabilized on pain medications.  Tr. 156.  Although she had frequent opportunities to report back pain

in medical appointments for various other matters, she did not mention anything similar until she

reported a new onset of hip pain in August 2003.  Tr. 183-84.

The ALJ considered Beck's work record.  Beck reportedly quit her job due to health reasons,

but the ALJ found no medical evidence of a change or deterioration in her condition that would

account for this.  Beck's voluntary resignation is not accompanied by a physician's statement.  Tr.

145.  The only indications of difficulty on the job were Beck's subjective reports and third party

reports derived from her subjective reports.

The ALJ considered Beck's descriptions of impairment-related symptoms and limitations and

found that they were inconsistent with her reported activities.  Beck traveled by truck to Utah and

back and took a 10-day vacation to New Orleans.  She swam on a regular basis and reported that it

improved her pain, but discontinued this beneficial activity because she let her club membership

lapse.  The court acknowledges that these activities are not equivalent to full time employment.

Nonetheless, the ALJ could reasonably find the activities inconsistent with Beck's implications that

she must lie down for a significant part of each day and that her back pain becomes unbearable with

any activity including sitting.

The ALJ identified statements and pain behaviors that seemed to exaggerate Beck's symptoms. In June 2002 she reported that her pain had become "unbearable" three years earlier. Yet she continued to work until March 2002. Similarly she asked her pain specialist to prescribe a cane, but there is no mention of either the need for or use of a cane anywhere else in the record. Tr. 157. Indeed her physical examinations were generally benign, showing no evidence of weakness, sensory deficits, imbalance or indication that she needed a device to assist her ambulation.

The ALJ found that Beck exaggerated the side effects of her medications. She testified that side effects of prescription medications would prevent her from performing work. Beck reported grogginess, dry mouth, some dizziness and ringing in the ears when she began pain management with Vladimir Fiks, M.D. in December 2000. The side effects diminished with medication adjustments and Beck reported doing well, even at work. Tr. 124-26.

Beck had another episode of side effects during January and February 2001. She experienced dizziness, nausea and occasional vomiting which were attributed to medication-induced hepatitis in reaction to the medication Zanaflex. These side effects resolved when Zanaflex was discontinued. Tr. 218, 232-33.

During the period for which Beck claims disability, there is no evidence of significant side effects from medications. On April 25, 2002, Beck reported only slight pain and no medication side effects except mild nausea. Tr. 128. Her next appointment was a routine follow-up in August 2002, and no medication side effects were noted. Tr. 157. In October 2002 Dr. Kaur-Jayaram noted that Beck was tolerating her medications well and experiencing no side effects. Tr. 156. Indeed there is no later mention of medication side effects in the record.

In conclusion the ALJ could reasonably conclude from all the foregoing that Beck is not fully credible in asserting that she must lie down for significant periods during the day, suffers from severe medication side effects and cannot perform light or sedentary work. The ALJ considered appropriate factors and made findings that are sufficiently specific to permit the court to conclude that he did not arbitrarily discredit her testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). His interpretation of the evidence is reasonable and should not be disturbed. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

### B.    Dr. Cleary's Opinion

Dr. Cleary was Beck's primary care physician. He referred Beck to orthopedists, neurologists and pain specialists in attempts to alleviate her symptoms. In February 2002, Dr. Cleary wrote in his notes that:

> She simply does not feel she can work anymore, in spite of being on the medication. She would like for me to write a note that will enable her not to work anymore. . . I told her that . . . this really should be attested to by Dr. Jayaram.

Tr. 142.

Dr. Cleary's reference to Dr. Kaur-Jayaram suggests that he felt the pain management specialist was in a better position to assess Beck's limitations. There is no record that Dr. Kaur-Jayaram provided a disability opinion and nothing indicates that he felt Beck could not work.

On April 1, 2002, Dr. Cleary wrote a letter stating:

> It is my opinion that Ms. Beck suffers from chronic back pain requiring the use of chronic pain medicines. As such, I feel that she is disabled from this. I do not believe that she is able to work both because of her chronic back pain and also because of the side effects her pain medications exert upon her.

Tr. 141.

Dr. Cleary's letter did not identify specific activities or functions he believed Beck could not perform or specific side effects from her medications.  The state agency sent a form letter seeking clarification and on August 1, 2002, Dr. Cleary responded.  He indicated that Beck could lift a gallon of milk once or twice a day, walk one-half a block and needed to "rotate between sitting and laying all day."  Tr. 140.  He indicated that these restrictions began in May 1998.

When asked to explain the effects of pain and/or fatigue on Beck's overall function, Dr. Cleary did not respond.  When asked the basis of the restrictions indicated, Dr. Cleary responded that they were based on Beck's complaints and not on objective findings.

The ALJ gave little weight to Dr. Cleary's disability letter because it was expressly based on subjective statements which the ALJ found to be not credible.  An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaint of disabling pain which the ALJ properly discounted.  *Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989); *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001).

Dr. Cleary's opinion that Beck was disabled is not entitled to significant weight.  The question of whether a claimant is employable is not a medical opinion about specific functional limitations, but an administrative finding that the regulations reserve to the Commissioner.  Opinions on issues reserved to the Commissioner cannot be given controlling weight or special significance, even when offered by a treating physician.  20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p.

The ALJ is not required accept a physician's opinion that is conclusory or unsupported by clinical findings.  *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).  Dr. Cleary did not make any findings consistent with his disability letter or rely on other physicians' findings consistent with the functional limitations he suggested.  Indeed, although Dr. Cleary's letter stated that Beck's excessive

restrictions had persisted since May 1998, this assertion is negated by Beck's demonstrated ability to work full time for nearly four years after that date.

In conclusion, the court finds no error in the ALJ's evaluation of Dr. Cleary's disability letter.

### C.    Lay Witness Statements

Beck contends the ALJ improperly rejected the statements three lay witnesses: her husband Andrew Beck, her former coworker Beverly Gay and her friend Carol Williams.   Beck argues that the ALJ ignored their observations of Beck sitting or lying down most of the day and nodding off after taking medication.

Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F3d 915, 918 (9th Cir 1993).  Such testimony cannot be disregarded without comment.   *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996).  If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

Mr. Beck provided a third party witness statement dated June 30, 2004.  He stated that Beck had been active during their 11-year marriage, working full-time, maintaining the household and caring for their children.  She was no longer able to do these activities due to back pain.  Mr. Beck stated that "on a typical day my wife will nod off for an hour and a half or so after taking her medication."  Tr. 118.

The ALJ considered Mr. Beck's statement and found his observations generally credible. He noted that Mr. Beck's observations of his wife nodding off, while credible, did not reflect her behavior during normal work hours while Mr. Beck was not at home.  In addition, the ALJ noted that Mr. Beck's observation had to be viewed in context with the treatment record and the evidence as

a whole.  The physician's records described previously indicate that Beck stopped complaining of grogginess from her medications before Mr. Beck produced his statement.  The ALJ could reasonably conclude that the nodding off Mr. Beck observed was not a medication side effect or product of her medically determinable impairments.

Gay provided a written statement dated June 28, 2004.  She indicated that Beck frequently had to lie down while working at Quest Diagnostic.  Beck continued to have pain despite medication and the medication made her nauseous and dizzy.  Sometimes Beck was unable to complete assigned tasks.  Tr. 120.

The ALJ did not disregard or discount Gay's statement, but noted that it had to be weighed in conjunction with the objective medical evidence the record as a whole.  For example, while Gay's observation credibly described Beck's behavior at one point in time, her reports to physicians indicate that she later derived reasonable relief from pain medication and the side effects Gay described were attributed to medication-induced hepatitis and subsided with prescription changes. The ALJ found Gay's observation that Beck could not complete some assigned tasks, while credible, did not establish that she could not perform other work, including the lab assistant occupation as it is generally performed.

Williams provided a written third party questionnaire dated June 24, 2002.  She observed that Beck walked slowly, took naps during the day, did not do household chores and experienced upset stomach and dry mouth as side effects of her pain medication.  Tr. 88-99.

The ALJ found Williams's observations generally credible.  He noted that Williams observed Beck engaging in other activities that seemed to exceed the level of incapacity Beck claimed.  For example, Williams indicated that Beck participated in social activities and went out to movies.  Beck

could sit through movies by fidgeting and changing positions and could remember and discuss the programs she watched on television.

Williams related that Beck could drive, went swimming regularly at an athletic club, attended organized social activities if seating was available, engaged in arts and crafts, read books and magazines, took care for her own personal hygiene without assistance, fed and cared for a pet and supervised the upbringing of at least one child. Tr. 88-99. The ALJ could reasonably conclude that taken in context with the record as a whole, Williams's observations, while credible, did not establish the existence of medically determinable functional limitations exceeding those in his RFC assessment.

In conclusion, the ALJ considered the statements of these lay witnesses and found them generally credible in describing their observations of Beck's activities and behaviors. He did not disregard or discount their observations, but properly weighed them in context with the record as a whole. The court finds no error in the ALJ's evaluation of the lay witness statements.

### D.    Other Challenges to the Evaluation of the Evidence

Beck argues that the ALJ did not comply with SSR 96-8p because he failed to assess whether Beck is capable of working on a regular and sustained basis, failed to consider all of her impairments and failed to consider the side effects of her medications.

Beck argues that there is no evidence to support the contention that she can work on a regular and sustained basis. This statement reverses the applicable burden of proof. The burden is on the plaintiff to produce evidence that she cannot work. *Roberts v. Shalala*, 66 F.3d at 182. If she asserts that she cannot work on a sustained basis, she must produce evidence from which this can be established. For example, she could show that her condition waxes and wanes, deteriorates during

the workday or some other basis from which it can reasonably be inferred that she can work some times but not others.

Beck did not assert such an impairment in the allegations of her applications for disability benefits or in her testimony; nor did she produce credible evidence of such an impairment. The ALJ considered all the evidence Beck produced and in doing so considered all the evidence of her inability to work on a sustained basis.

Beck's assertion that the ALJ failed to consider all of her impairments, including sleep apnea, fatigue, depression with anxiety, hepatitis, and obesity cannot be sustained. The ALJ considered the evidence of all these conditions and reached reasonable conclusions that are supported by the record.

Similarly, Beck's assertion that the ALJ failed to consider the side effects of her medications has no merit. The ALJ reasonably concluded from Beck's reports to her physicians that her side effects subsided. The ALJ was entitled to rely on progress notes indicating that Beck was tolerating medications well and experiencing no side effects.

In conclusion, the ALJ evaluated all the evidence in the record as a whole, and in doing so fulfilled his duties under SSR 96-8p.

**III.    Step Four Determination**

Beck challenges the ALJ's step four determination that she is capable of working as a laboratory assistant on three related grounds. First, Beck contends the vocational evidence was insufficient to support the ALJ's decision because it was elicited with a hypothetical question which did not reflect all the limitations described in her statements, Dr. Cleary's opinion and the statements of the three lay witnesses.

An ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant. *Andrews v. Shalala*, 53 F.3d at 1043. The assumptions in the hypothetical question must be supported by substantial evidence. *Id.* The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p.

As discussed more fully previously, the ALJ properly evaluated all the evidence of Beck's limitations. His RFC assessment reflected reasonable conclusions that could be drawn from the record as a whole. He properly excluded limitations that he found not supported by the record and the hypothetical question used to elicit vocational testimony accurately reflected his RFC assessment. Accordingly, the court finds no error in the hypothetical question used to elicit vocational testimony.

Second, Beck contends the ALJ failed to properly compare her limitations with the requirements of her past work as a laboratory assistant as required by SSR 96-8p and SSR 82-62. The SSRs and regulations require an ALJ to make findings of fact reflecting the claimant's RFC, the functional demands of the claimant's past work and whether the claimant's RFC precludes functions required to perform the claimant's past work. 20 C.F.R. §§ 404.1520(e), 416.920(e); SSR 82-62. The ALJ made the required findings. Tr. 28-29. The ALJ's RFC assessment is supported by substantial evidence as described previously. His finding regarding the requirements of Beck's past work and his conclusion that her RFC does not preclude those requirements are supported by the testimony of the vocational expert. Tr. 308-09.

Third, Beck contends the ALJ failed to address the accommodations she received from her former employer to accommodate severe pain and grogginess from medications. The ALJ did not accept the evidence of these limitations. The record as a whole does not support that her pain is as severe as alleged, that she continues to experience grogginess as a medication side effect or that the

accommodations described were medically necessary. The ALJ addressed these issues in his evaluation of the evidence and his RFC assessment.

The record as a whole supports the ALJ's conclusion that Beck retains the RFC to perform the occupation of laboratory assistant as it is generally performed in the national economy. This is sufficient to uphold the ALJ's decision. 20 C.F.R. §§ 404.1560(b), 416.960(b); SSR 82-61.

### RECOMMENDATION

Based on the foregoing, the Commissioner's determination that Beck does not suffer from a disability and is not entitled to an award under Title II or Title XVI of the Social Security Act should be affirmed.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this ___7___ day of February 2007.

____/s/_____
John P. Cooney
United States Magistrate Judge

21 - FINDINGS AND RECOMMENDATION